**Received Electronically**
**June 23, 2025**
United States Court of Appeals
For the First Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NEW JERSEY; STATE OF RHODE ISLAND; STATE OF MARYLAND; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF MAINE; COMMONWEALTH OF MASSACHUSETTS; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; AND STATE OF WISCONSIN,

        Petitioners,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN P. DUFFY, in his official capacity as Secretary of the United States Department of Transportation;

        Respondents.

Case No. 25-

## PETITION FOR REVIEW

Pursuant to Federal Rule of Appellate Procedure 15(a), the States of California, Illinois, New Jersey, Rhode Island, Maryland, Colorado, Connecticut, Delaware, Hawaii, Maine, the Commonwealth of Massachusetts, the People of the State of Michigan, Minnesota, Nevada, New Mexico, New York, Oregon, Vermont,

1

Washington, and Wisconsin (Petitioners) petition this Court to review: (1) the U.S. Secretary of Transportation's policy of imposing an immigration enforcement condition on all U.S. Department of Transportation (U.S. DOT) funding, as announced in the Directive issued by the Secretary on April 24, 2025 to all recipients of U.S. DOT funding (Exhibit 1); and (2) the actions of Respondents U.S. DOT and Secretary of Transportation Sean Duffy in furtherance of the policy (see, e.g., Exhibits 2-9).[1] This petition for review is protective in nature for the reasons stated below.

Petitioners believe the federal district courts have exclusive jurisdiction to review Respondents' policy and actions under 28 U.S.C. § 1331 and 5 U.S.C. Chapter 7. Accordingly, Petitioners have challenged Respondents' actions in the U.S. District Court for the District of Rhode Island. *See California v. U.S. Dep't of Transp.*, No. 1:25-cv-00208-JJM-PAS (filed May 13, 2025). However, in their opposition to Petitioners' motion for preliminary injunction before the federal district court, Respondents argue that "some" of the States' claims belong in this Court, pursuant to 49 U.S.C. §§ 46110, 47111(d)(3), 60119, 20114(c) and 28 U.S.C.

---

[1] Alternatively, if it is determined that only some of Petitioners' claims in *California v. U.S. Department of Transportation*, No. 1:25-cv-00208-JJM-PAS (D.R.I.) are subject to the exclusive jurisdiction of this Court, Petitioners petition this Court for review of only those claims subject to this Court's exclusive jurisdiction.

§ 2342. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 11-12, 15 n.2, ECF No. 51, *California v. U.S. Dep't of Transp.*, No. 1:25-cv-00208-JJM-PAS (June 5, 2025).

Petitioners disagree, but nonetheless file this Petition in an abundance of caution to protect Petitioners' right to judicial review in the event the district court is held to lack jurisdiction and this Court is determined to be the proper forum.

Dated:        June 23, 2025

**ROB BONTA**
  ATTORNEY GENERAL OF CALIFORNIA

Michael L. Newman
  *Senior Assistant Attorney General*
Joel Marrero
James E. Stanley
  *Supervising Deputy Attorneys General*
Brandy Doyle
Luke Freedman
Newton Knowles
Christopher Medeiros
Deylin Thrift-Viveros
Delbert Tran
  *Deputy Attorneys General*

/s/ Delbert Tran
Delbert Tran
  *Deputy Attorney General*
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
(415) 229-0110
delbert.tran@doj.ca.gov

*Attorneys for the State of California*

**KWAME RAOUL**
  ATTORNEY GENERAL OF ILLINOIS

/s/ Alex Hemmer
Alex Hemmer
  *Deputy Solicitor General*
Michael M. Tresnowski
R. Henry Weaver
  *Assistant Attorneys General*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 590-7932
alex.hemmer@ilag.gov

*Attorneys for the State of Illinois*

**MATTHEW J. PLATKIN**
  ATTORNEY GENERAL OF NEW JERSEY

/s/ Shankar Duraiswamy
Shankar Duraiswamy
  *Deputy Solicitor General*
Mayur P. Saxena
  *Assistant Attorney General*
Maryanne M. Abdelmesih
Surinder K. Aggarwal
Yael Fisher
Nathaniel F. Rubin
  *Deputy Attorneys General*
25 Market St., PO Box 093
Trenton, NJ 08625-0093
(609) 376-2745
shankar.duraiswamy@law.njoag.gov

*Attorneys for the State of New Jersey*


**ANTHONY G. BROWN**
  ATTORNEY GENERAL OF MARYLAND

/s/ James C. Luh
James C. Luh
  *Senior Assistant Attorney General*
Office of the Maryland Attorney General
200 Saint Paul Place
20th Floor
Baltimore, MD 21202
(410) 576-6411
jluh@oag.state.md.us

*Attorneys for the State of Maryland*


**PETER F. NERONHA**
  ATTORNEY GENERAL OF RHODE ISLAND

/s/ Patrick Reynolds
Kathryn M. Sabatini (RI Bar No. 8486)
  *Civil Division Chief*
  *Special Assistant Attorney General*
Patrick Reynolds (RI Bar No. 10459)
  *Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 1882
preynolds@riag.ri.gov
ksabatini@riag.ri.gov

*Attorneys for the State of Rhode Island*


**PHILIP J. WEISER**
  ATTORNEY GENERAL OF COLORADO

/s/ Sam Wolter
Sam Wolter
  *Assistant Attorney General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
samuel.wolter@coag.gov

*Attorneys for the State of Colorado*

**WILLIAM TONG**
  ATTORNEY GENERAL OF CONNECTICUT

/s/ Michael K. Skold
Michael K. Skold
  *Solicitor General*
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020
michael.skold@ct.gov

*Attorneys for the State of Connecticut*


**ANNE E. LOPEZ**
  ATTORNEY GENERAL OF HAWAIʻI

/s/ Kalikoʻonālani D. Fernandes
David D. Day
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes
  *Solicitor General*
Department of the Hawaiʻi Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*


**KATHLEEN JENNINGS**
  ATTORNEY GENERAL OF DELAWARE

/s/ Ian R. Liston
Ian R. Liston
  *Director of Impact Litigation*
Vanessa L. Kassab
  *Deputy Attorney General*
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Attorneys for the State of Delaware*


**AARON M. FREY**
  ATTORNEY GENERAL OF MAINE

/s/ Vivian A. Mikhail
Vivian A. Mikhail
  *Deputy Attorney General*
Office of the Maine Attorney
General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
vivian.mikhail@maine.gov

*Attorneys for the State of Maine*

**ANDREA JOY CAMPBELL**
  ATTORNEY GENERAL OF MASSACHUSETTS

/s/ Katherine Dirks
Katherine Dirks
  *Chief State Trial Counsel*
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Attorneys for the Commonwealth of
  Massachusetts*

**DANA NESSEL**
  ATTORNEY GENERAL OF MICHIGAN

/s/ Neil Giovanatti
Neil Giovanatti
Michael Dittenber
  *Assistant Attorneys General*
Michigan Department of Attorney
General
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
DittenberM@michigan.gov

*Attorneys for the People of the State
  of Michigan*

**KEITH ELLISON**
  ATTORNEY GENERAL OF MINNESOTA

/s/ Brian S. Carter
Brian S. Carter
  *Special Counsel*
Minnesota Attorney General's Office
445 Minnesota Street
Suite 1400
St. Paul, MN 55101
(651) 757-1010
brian.carter@ag.state.mn.us

*Attorneys for the State of Minnesota*

**AARON D. FORD**
  ATTORNEY GENERAL OF NEVADA

/s/ Heidi Parry Stern
Heidi Parry Stern
  *Solicitor General*
Office of the Nevada Attorney
General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
hstern@ag.nv.gov

*Attorneys for the State of Nevada*

**RAÚL TORREZ**
  ATTORNEY GENERAL OF NEW MEXICO

/s/ Steven Perfrement
Steven Perfrement
  *Senior Litigation Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
sperfrement@nmdoj.gov

*Attorneys for the State of New Mexico*

**LETITIA JAMES**
  ATTORNEY GENERAL OF NEW
YORK

/s/ Zoe Levine
Zoe Levine
  *Special Counsel for Immigrant
Justice*
Julie Dona
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal
Initiatives*
Mark Ladov
  *Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 907-4589
zoe.levine@ag.ny.gov

*Attorneys for the State of New York*

**DAN RAYFIELD**
  ATTORNEY GENERAL OF OREGON

/s/ Thomas H. Castelli
Thomas H. Castelli
  *Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
thomas.castelli@doj.oregon.gov

*Attorneys for the State of Oregon*

**CHARITY R. CLARK**
  ATTORNEY GENERAL OF VERMONT

/s/ Julio A. Thompson
Julio A. Thompson
  *Assistant Attorney General*
  *Co-Director, Civil Rights Unit*
Officer of the Vermont Attorney
General
109 State Street
Montpelier, VT 05609
(802) 828-3657
julio.thompson@vermont.gov

*Attorneys for the State of Vermont*

**NICHOLAS W. BROWN**
  ATTORNEY GENERAL OF WASHINGTON

/s/ Benjamin Seel
Benjamin Seel
Tyler Roberts
Cristina Sepe
Marsha Chien
  *Assistant Attorneys General*
Washington State Office of the Attorney
  General
800 Fifth Avenue
Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Benjamin.Seel@atg.wa.gov
Tyler.Roberts@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Marsha.Chien@atg.wa.gov

*Attorneys for the State of Washington*

**JOSHUA L. KAUL**
  ATTORNEY GENERAL OF
WISCONSIN

/s/ Frances Reynolds Colbert
Frances Reynolds Colbert
  *Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-9226
frances.colbert@wisdoj.gov

*Attorneys for the State of Wisconsin*

# CERTIFICATE OF SERVICE

Under Federal Rule of Appellate Procedure 25(b), service is required "[u]nless a rule requires service by the clerk." Because this petition is filed pursuant to Federal Rule of Appellate Procedure 15(a), Federal Rule of Appellate Procedure 15(c) states that "[t]he circuit clerk must serve a copy of the petition for review . . . on each respondent." *See also* 49 U.S.C. § 46110(b) ("When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary . . . ."); *id.* § 60119(a)(1) (similar). Petitioners therefore are not required to serve this petition on other parties.

Federal Rule of Appellate Procedure 15(c) also states that petitioners must serve "a copy [of the petition] on each party admitted to participate in the agency proceedings, except for the respondents" and "file with the clerk a list of those so served." Because the agency actions challenged here do not involve any parties admitted to participate in agency proceedings, *see* 5 U.S.C. § 551(12), petitioners have not served any additional parties.

/s/  Delbert Tran
Delbert Tran

# EXHIBIT 1

Letter from Sean P. Duffy, Secretary, U.S. Department of Transportation, to All Recipients of U.S. Department of Transportation Funding (Apr. 24, 2025) (the "Duffy Directive")



April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq.*) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq.*), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy

# EXHIBIT 2

U.S. Department of Transportation Press
Release (Apr. 24, 2025)

🇺🇸 An official website of the United States government Here's how you know ⌄

Home \ Newsroom

**In This Section**                                                                                                            +

**Media Contact**

**Press Office**
US Department of Transportation
1200 New Jersey Ave, SE
Washington, DC 20590
United States
Email: pressoffice@dot.gov
Phone: 1 (202) 366-4570 ☎

If you are deaf, hard of hearing, or have a speech disability, please dial 7-1-1 to access telecommunications relay services.

## Trump's Transportation Secretary Sean P. Duffy: Follow the Law

Thursday, April 24, 2025

**WASHINGTON, D.C.** – U.S. Transportation Secretary Sean P. Duffy issued a reminder to all recipients of federal transportation funding that they must comply with federal laws. Non-compliance may lead to enforcement actions.

*"Federal grants come with a clear obligation to adhere to federal laws,"* said **U.S. Transportation Secretary Sean P. Duffy**. *"It shouldn't be controversial – enforce our immigration rules, end anti-American DEI policies, and protect free speech. These values reflect the priorities of the American people, and I will take action to ensure compliance."*

Key Letter Excerpts:
*"As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations."*

On Immigration
*"In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs."*
Cc: WHITE HOUSE EO DIRECTING DHS AND AG TO DENY FEDERAL FUNDING TO SANCTUARY JURISDICTIONS

On DEI
*"Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements."*
Cc: WHITE HOUSE EO ENDING DEI PROGRAMS WITHIN GOVERNMENT AND FACT SHEET

 

**U.S. DEPARTMENT OF TRANSPORTATION**

1200 New Jersey Avenue, SE
Washington, DC 20590
855-368-4200

**WANT TO KNOW MORE?**

Receive email updates about the latest in Safety, Innovation, and Infrastructure.

SUBSCRIBE NOW

**ABOUT DOT**

Meet the Secretary

Mission

Newsroom

Social Media

Leadership

Regulations

Transit Benefit Policy

Careers

Contact Us

**OPERATING ADMINISTRATIONS**

FAA

FHWA

FMCSA

FRA

FTA

GLS

MARAD

NHTSA

OIG

OST

PHMSA

**RESEARCH AND TECHNOLOGY**

Office of the Assistant Secretary for Research and Technology

Bureau of Transportation Statistics

Volpe Center

Ask-A-Librarian

**PRIORITIES**

Infrastructure Investment and Jobs Act

Cybersecurity

Safety

Transformation

**POLICIES, RIGHTS, AND LEGAL**

USA.gov

Privacy Policy

FOIA

Budget and Performance

No FEAR Act

Cummings Act Notices

Ethics

Web Policies and Notices

Vulnerability Disclosure Policy

Digital Accessibility

# EXHIBIT 3

Federal Railroad Administration General
Terms and Conditions (Apr. 23, 2025)
(Excerpts)


U.S. Department of Transportation
**Federal Railroad Administration**

---

Attachment 1

---

# GENERAL TERMS AND CONDITIONS

Revision Date: April 16, 2025

U.S. Department of Transportation
**Federal Railroad Administration**

# General Terms and Conditions
# Table of Contents

ATTACHMENT 1 .................................................................................................................................. 7

ARTICLE 1: TERMS AND CONDITIONS ............................................................................................... 7

    1.1    General Terms and Conditions ................................................................................................ 7

    1.2    Project-Specific Terms and Conditions ................................................................................... 7

    1.3    Program-Specific Clauses ........................................................................................................ 7

    1.4    Exhibits .................................................................................................................................... 8

ARTICLE 2: FRA ROLE AND RESPONSIBILITIES .................................................................................. 8

    2.1    FRA Role .................................................................................................................................. 8

    2.2    FRA Professional Staff ............................................................................................................ 8

ARTICLE 3: RECIPIENT ROLE ............................................................................................................. 9

    3.1    Representations and Acknowledgments on the Project .......................................................... 9

    3.2    Representations on Authority and Capacity ............................................................................ 9

    The Recipient represents that: ....................................................................................................... 9

    3.3    FRA Reliance .......................................................................................................................... 10

    3.4    Project Delivery ..................................................................................................................... 10

    3.5    Rights and Powers Affecting the Project ............................................................................... 10

    3.6    Notification of Changes to Key Personnel ............................................................................ 11

ARTICLE 4: AWARD AMOUNT, OBLIGATION, AND TIME PERIODS ................................................... 11

    4.1    Federal Award Amount ......................................................................................................... 11

    4.2    Federal Obligations ............................................................................................................... 11

    4.3    Maximum Funding Amount ................................................................................................... 11

    4.4    Budget Period ........................................................................................................................ 11

    4.5    Period of Performance .......................................................................................................... 11

ARTICLE 5: STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES ........................................ 11

    5.1    Notification Requirement ...................................................................................................... 11

    5.2    Scope and Statement of Work Changes ................................................................................ 12

    5.3    Schedule Changes .................................................................................................................. 12

    5.4    Budget Changes ..................................................................................................................... 12

    5.5    Project Cost Savings ............................................................................................................... 13

    5.6    FRA Acceptance of Changes .................................................................................................. 13

ARTICLE 6:  GENERAL REPORTING TERMS ........................................................................................ 14

    6.1    Alternative Reporting Methods ........................................................................................ 14

    6.2    Paperwork Reduction Act Notice ..................................................................................... 14

ARTICLE 7:  PROGRESS AND FINANCIAL REPORTING ......................................................................... 14

    7.1    Quarterly Project Progress Reports and Recertifications ........................................... 14

    7.2    Final Progress Reports and Financial Information ....................................................... 15

    7.3    Real Property Reporting .................................................................................................... 15

ARTICLE 8:  PERFORMANCE MEASUREMENT AND REPORTING ....................................................... 15

    8.1    Baseline Performance Measurement .............................................................................. 15

    8.2    Post-Project Performance Measurement ........................................................................ 15

    8.3    Project Outcomes Report .................................................................................................. 16

    8.4    General Performance Measurement Requirements ..................................................... 16

    8.5    Outcome Measurement and Reporting Survival .......................................................... 16

ARTICLE 9:  NONCOMPLIANCE AND REMEDIES ................................................................................. 16

    9.1    Noncompliance Determinations ..................................................................................... 16

    9.2    Remedies ............................................................................................................................. 17

    9.3    Other Oversight Entities ................................................................................................... 18

ARTICLE 10:  AGREEMENT SUSPENSION AND TERMINATION ......................................................... 18

    10.1    Suspension of Award Activities ..................................................................................... 18

    10.2    FRA Termination ............................................................................................................. 19

    10.3    Closeout Termination ...................................................................................................... 19

    10.4    Post-Termination Adjustments ...................................................................................... 19

    10.5    Non-Terminating Events ................................................................................................. 19

ARTICLE 11:  MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS ............................. 20

    11.1    Recipient Monitoring and Record Retention ............................................................... 20

    11.2    Financial Records and Audits ........................................................................................ 20

    11.3    Internal Controls ............................................................................................................. 21

    11.4    FRA Record Access .......................................................................................................... 21

    11.5    Site Visits .......................................................................................................................... 21

ARTICLE 12:  CONTRACTING AND SUBAWARDING ........................................................................... 21

    12.1    Buy America ...................................................................................................................... 21

    12.2    Small and Disadvantaged Business Requirements ..................................................... 22

    12.3    Engineering and Design Services [Reserved] .............................................................. 22

12.4    Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment ...22

12.5    Pass-Through Entity Responsibilities ...................................................................................22

12.6    Local Hiring Preference for Construction Jobs.....................................................................22

12.7    Procurement .......................................................................................................................22

ARTICLE 13:  COSTS, PAYMENTS, AND UNEXPENDED FUNDS ................................................................23

13.1    Limitation of Federal Award Amount .................................................................................23

13.2    Project Costs .......................................................................................................................23

13.3    Timing of Project Costs ......................................................................................................23

13.4    Recipient Recovery of Federal Funds.................................................................................23

13.5    Unexpended Agreement Federal Funds .............................................................................23

13.6    Interest Earned ..................................................................................................................24

13.7    Timing of Payments to the Recipient.................................................................................24

13.8    Payment Method ...............................................................................................................24

13.9    Information Supporting Expenditures ................................................................................24

13.10  Reimbursement Request Timing Frequency......................................................................24

13.11  Program Income .................................................................................................................24

ARTICLE 14:  PROPERTY AND EQUIPMENT ...............................................................................................25

14.1    General Requirements .......................................................................................................25

14.2    Relocation and Real Property Acquisition ..........................................................................25

14.3    Use for Originally Authorized Purpose...............................................................................25

14.4    Maintenance ......................................................................................................................25

14.5    Real Property Disposition...................................................................................................26

14.6    Equipment Disposition.......................................................................................................26

14.7    Recordkeeping....................................................................................................................26

14.8    Encumbrance......................................................................................................................26

ARTICLE 15:  AMENDMENTS ....................................................................................................................27

15.1    Bilateral Amendments .......................................................................................................27

15.2    FRA Unilateral Amendments .............................................................................................27

15.3    Other Amendments ...........................................................................................................27

ARTICLE 16:  [RESERVED] .........................................................................................................................27

ARTICLE 17:  [RESERVED] .........................................................................................................................27

ARTICLE 18:  LABOR AND WORK ..............................................................................................................27

18.1    Labor and Work..................................................................................................................27

ARTICLE 19: CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE ....................................................... 28

19.1 Critical Infrastructure Security and Resilience ............................................................................ 28

ARTICLE 20: FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY
REQUIREMENTS ........................................................................................................................................ 28

20.1 Uniform Administrative Requirements for Federal Awards ..................................................... 28

20.2 Federal Law and Public Policy Requirements ............................................................................ 28

20.3 Federal Freedom of Information Act ......................................................................................... 29

20.4 History of Performance ............................................................................................................... 29

20.5 Whistleblower Protection ........................................................................................................... 29

20.6 External Award Terms and Obligations...................................................................................... 30

20.7 Incorporated Certifications ........................................................................................................ 30

ARTICLE 21: ASSIGNMENT.................................................................................................................... 30

21.1 Assignment Prohibited ............................................................................................................... 30

ARTICLE 22: WAIVER ............................................................................................................................ 30

22.1 Waivers ......................................................................................................................................... 30

ARTICLE 23: ADDITIONAL TERMS AND CONDITIONS ........................................................................ 31

23.1 Disclaimer of Federal Liability .................................................................................................... 31

23.2 Environmental Review ................................................................................................................. 31

23.3 Project Maintenance Requirement............................................................................................. 32

23.4 Appropriations Act Requirements ............................................................................................. 32

23.5 Standards of Conduct.................................................................................................................. 32

23.6 Changed Conditions of Performance ........................................................................................ 33

23.7 Litigation ...................................................................................................................................... 33

23.8 [Reserved] .................................................................................................................................... 33

23.9 Equipment and Supplies ............................................................................................................. 33

23.10 Safety and Technology Data ....................................................................................................... 33

23.11 Intellectual Property ................................................................................................................... 33

23.12 Liquidation of Recipient Obligations......................................................................................... 33

ARTICLE 24: CONSTRUCTION AND DEFINITIONS ............................................................................... 34

24.1 Agreement ................................................................................................................................... 34

24.2 Construction................................................................................................................................. 34

24.3 Integration ................................................................................................................................... 34

24.4 Definitions .................................................................................................................................... 34

24.5    Calendar Dates ................................................................................................................ 35

24.6    Communication in Writing ................................................................................................ 35

24.7    Severability ...................................................................................................................... 35

ARTICLE 25:  AGREEMENT EXECUTION AND EFFECTIVE DATE .................................................... 35

25.1    Counterparts .................................................................................................................... 35

25.2    Effective Date ................................................................................................................... 36

ARTICLE 26:  PROGRAM-SPECIFIC CLAUSES ............................................................................... 36

26.1    Interstate Rail Compacts Grant Program ........................................................................ 36

26.2    Railroad Crossing Elimination Program Clauses ........................................................... 38

26.3    Consolidated Rail Infrastructure and Safety Improvements Grants Clauses.............................. 40

26.4    Restoration and Enhancement Grants Clauses............................................................... 42

26.5    Federal-State Partnership for Intercity Passenger Rail and Federal-State Partnership for State of Good Repair Clauses ................................................................................................................... 45



U.S. Department of Transportation
**Federal Railroad Administration**

# ATTACHMENT 1

This Grant Agreement (Agreement) is between the Federal Railroad Administration (FRA) and the Recipient identified in Attachment 2: Project-Specific Terms and Conditions. This Agreement, including the Agreement cover sheet, this Attachment 1, Attachment 2, and Exhibits A–C, constitutes the entire Agreement between FRA and the Recipient regarding the Project as defined in Attachment 2. All prior discussions and understandings concerning the scope and subject matter of this agreement are superseded by this Agreement.

This Agreement is governed by and subject to 2 C.F.R. part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards, and the U.S. Department of Transportation (USDOT) implementing regulations at 2 C.F.R. part 1201.

# ARTICLE 1:  TERMS AND CONDITIONS

**1.1     General Terms and Conditions**

This Attachment 1: General Terms and Conditions, is part of the Agreement between FRA and the Recipient. This Attachment 1 contains the standard terms and conditions governing the administration of this Agreement and the execution of the Project. The General Terms and Conditions incorporate by reference the information contained in Attachment 2 and the Exhibits to this Agreement.

**1.2     Project-Specific Terms and Conditions**

Attachment 2: Project-Specific Terms and Conditions, is part of the Agreement between FRA and the Recipient. Attachment 2 contains Project-Specific Terms and Conditions, which may include special terms and conditions.

**1.3     Program-Specific Clauses**

Article 26 of this Attachment 1 contains the applicable program-specific clauses. The Recipient will comply with the program-specific clauses below that are associated with the grant program identified in Attachment 2 of this Agreement. In the event that the Recipient's grant is not authorized under a program listed below, Article 26 does not apply.

(a)  For Projects funded under the Interstate Rail Compacts program (49 U.S.C. § 22910), the Recipient will comply with the program-specific clauses in Article 26.1.

(b)  For Projects funded under the Railroad Crossing Elimination program (49 U.S.C. § 22909), the Recipient will comply with the program-specific clauses in Article 26.2.

(c)  For Projects funded under the Consolidated Rail Infrastructure and Safety Improvements program (49 U.S.C. § 22907), the Recipient will comply with the program-specific clauses in Article 26.3.

(d)  For Projects funded under the Restoration and Enhancement program (49 U.S.C. § 22908), the Recipient will comply with the program-specific clauses in Article 26.4.



U.S. Department of Transportation
**Federal Railroad Administration**

(e)  For Projects funded under the Federal-State Partnership for Intercity Passenger Rail program (49 U.S.C. § 24911) and Federal-State Partnership for State of Good Repair (as authorized in Sections 11103 and 11302 of the Passenger Rail Reform and Investment Act of 2015 (Title XI of the Fixing America's Surface Transportation (FAST) Act, Pub. L. No. 114-94 (2015))), the Recipient will comply with the program-specific clauses in Article 26.5.

**1.4      Exhibits**

Exhibits A–C are part of the Agreement between FRA and the Recipient. The Recipient will comply with Exhibits A–C.

## ARTICLE 2:  FRA ROLE AND RESPONSIBILITIES

**2.1      FRA Role**

(a)  FRA is responsible for funding disbursements to the Recipient under this Agreement. FRA will also conduct oversight and monitoring activities to assess Recipient progress against established performance goals and to assess compliance with terms and conditions, including the Statement of Work and other requirements of this Agreement.

(b)  If this award is made as a Cooperative Agreement, FRA will have substantial programmatic involvement. Substantial involvement means that, after award, technical, administrative, or programmatic staff will assist, guide, coordinate, or otherwise participate with the Recipient in Project activities.

(c)  If this award is made as a Grant, FRA will not have substantial programmatic involvement.

**2.2      FRA Professional Staff**

FRA may provide professional staff to review work in progress, completed products, and to provide or facilitate access to technical assistance when it is available, feasible, and appropriate. FRA professional staff may include the following:

(a)  Financial Analyst. The Financial Analyst will serve as the Recipient's point of contact for systems (e.g., GrantSolutions and the Delphi eInvoicing System) access and troubleshooting as well as for financial monitoring.

(b)  Grant Manager. The Grant Manager will serve as the Recipient's point of contact for grant administration and will oversee compliance with the terms and conditions in this Agreement. The Grant Manager reviews financial reports, performance reports, and works with the Project Manager to facilitate effective Project delivery.

(c)  Project Manager. The Project Manager will serve as the Recipient's point of contact for the technical aspects of Project delivery. The Project Manager coordinates Project deliverable review, provides technical assistance to the Recipient, and generally assesses Project progress and performance.



## ARTICLE 3: RECIPIENT ROLE

**3.1** **Representations and Acknowledgments on the Project**

(a) The Recipient represents that:

(1) all material statements of fact in the Application were accurate when the Application was submitted and now; and

(2) the Recipient read and understands the terms and conditions in Attachment 1 and Attachment 2 of this Agreement, the applicable program-specific clauses in Article 26 of this Attachment 1, and the information and conditions in the Exhibits.

(b) The Recipient acknowledges that:

(1) the terms and conditions impose obligations on the Recipient and that the Recipient's non-compliance with the terms and conditions may result in remedial action, including terminating the Agreement, disallowing costs incurred for the Project, requiring the Recipient to refund Federal contributions to FRA, and reporting the non-compliance in the Federal-government-wide integrity and performance system. Recipient acknowledges that the terms and conditions impose such obligations on the Recipient whether the award is made as a Cooperative Agreement, Grant Agreement, or Phased Funding Agreement.

(2) The Recipient acknowledges that the requirements of this Agreement apply to the entire Project, including Project costs satisfied from sources other than Agreement Federal Funds.

(c) By entering into this Agreement with FRA, the Recipient agrees to comply with the terms and conditions in Attachment 1 and Attachment 2, including applicable program-specific clauses in Article 26 of this Attachment 1, Exhibits A–C, and all applicable Federal laws and regulations, including those identified in this Agreement. The Recipient will ensure compliance with all terms of this Agreement and all of its parts for all tiers of subawards and contracts under this Agreement, as appropriate. The Recipient understands that the terms and conditions of this Agreement apply regardless of whether the award is made as a Cooperative Agreement, Grant Agreement, or Phased Funding Agreement.

**3.2** **Representations on Authority and Capacity**

The Recipient represents that:

(a) it has the legal authority to receive Federal financial assistance under this Agreement;

(b) it has the legal authority to complete the Project;

(c) all representations and warranties made in the Federal System for Awards Management (SAM.gov) and in the Application are true and correct;


(d)  it has the capacity, including legal, technical, institutional, managerial, and financial capacity, to comply with its obligations under this Agreement and complete the Project;

(e)  the Non-Federal Funds listed in Article 6 of Attachment 2 of this Agreement are committed to fund the Project;

(f)  it has sufficient funds available to ensure that equipment and infrastructure funded under this Agreement will be operated and maintained in compliance with this Agreement and applicable Federal law;

(g)  it has sufficient funds available to ensure that operations funded under this agreement are conducted in compliance with this Agreement and applicable Federal law; and

(h)  the individual executing this agreement on behalf of the Recipient has the legal authority to enter this Agreement and make the statements and certifications in this Agreement on behalf of the Recipient.

**3.3**     **FRA Reliance**

The Recipient acknowledges that:

(a)  FRA relied on statements of fact in the Application and SAM.gov to select the Project to receive this award;

(b)  FRA relied on statements of fact in the Application, SAM.gov, and this Agreement to determine that the Recipient and the Project are eligible to receive financial assistance under this Agreement;

(c)  FRA relied on statements of fact in the Application, SAM.gov, and this Agreement to determine that the Recipient has the legal authority to implement the Project; and

(d)  FRA relied on statements of fact in both the Application and this Agreement to establish the terms of this Agreement; and

(e)  FRA's selection of the Project to receive this award may have prevented awards to other eligible applicants.

**3.4**     **Project Delivery**

(a)  The Recipient will implement and complete the Project to FRA's satisfaction under the terms of this Agreement.

(b)  The Recipient will ensure that the Project is financed, constructed, operated, and maintained in accordance with all applicable Federal laws, regulations, and policies.

**3.5**     **Rights and Powers Affecting the Project**

(a)  The Recipient will not take or permit any action that deprives it of any rights or powers necessary to the Recipient's performance under this Agreement without written approval of FRA.


## ARTICLE 19:  CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

**19.1**    **Critical Infrastructure Security and Resilience**

(a)  Consistent with the National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Control Systems (July 28, 2021) and the National Security Memorandum on Critical Infrastructure Security and Resilience (April 30, 2024), the Recipient will consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b)  If the Security Risk Designation in Section 1.3 of Attachment 2 of this Agreement is "Elevated," then not later that than two years after the date of this Agreement the Recipient will submit to FRA a report that:

(1)  identifies a cybersecurity point of contact for the transportation infrastructure being improved in the Project;

(2)  summarizes or contains a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project;

(3)  summarizes or contains a cybersecurity incident response plan for the transportation infrastructure being improved in the Project;

(4)  documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)  describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 20:  FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**20.1**    **Uniform Administrative Requirements for Federal Awards**

The Recipient will comply, and will ensure that other entities receiving funding under this agreement will comply, with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201, regardless of whether the Recipient or other entity receiving funding under this agreement is a Non-Federal entity as defined in 2 C.F.R. § 200.1, except that subpart F of part 200 does not apply if the Recipient or Subrecipient is a for-profit entity.

**20.2**    **Federal Law and Public Policy Requirements**

(a)  The Recipient will ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not


impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

(b) Pursuant to Section 3(b)(iv)(A) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(c) Pursuant to Section 3(b)(iv)(B) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

(d)  The failure of this Agreement to expressly identify Federal law applicable to the Recipient or activities under this Agreement does not make that law inapplicable.

**20.3    Federal Freedom of Information Act**

(a)  FRA is subject to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

(b)  The Recipient acknowledges that the Application and materials submitted to FRA by the Recipient related to this Agreement will become FRA records that may be subject to public release under 5 U.S.C. § 552. If the Recipient submits any materials to FRA related to this Agreement that the Recipient considers to include trade secret or confidential commercial or financial information, the Recipient should note that the submission contains confidential business information, mark each affected page, and highlight or otherwise denote the portions of the submission that contain confidential business information.

**20.4    History of Performance**

Under 2 C.F.R. § 200.206, any Federal awarding agency may consider the Recipient's performance under this Agreement, when assessing the risks of making a future Federal financial assistance award to the Recipient.

**20.5    Whistleblower Protection**

(a)  The Recipient acknowledges that it is a "Recipient" within the scope of 41 U.S.C. § 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b)  The Recipient will inform its employees in writing of the rights and remedies provided under 41 U.S.C. § 4712, in the predominant native language of the workforce.

# EXHIBIT 4

Federal Highway Administration General
Terms and Conditions, Competitive Grants
(Apr. 22, 2025)
(Excerpts)

**FEDERAL HIGHWAY ADMINISTRATION**

**COMPETITIVE GRANT PROGRAM GENERAL TERMS AND CONDITIONS**


**Date: April 22, 2025**

**TABLE OF CONTENTS**

GENERAL TERMS AND CONDITIONS .................................................................. 6
Article 1 PURPOSE ............................................................................................... 6
   1.1   Purpose .................................................................................................. 6
Article 2 FHWA ROLE .......................................................................................... 6
   2.1   Federal Highway Administration (FHWA) Responsibilities. ........................ 6
Article 3 RECIPIENT ROLE ................................................................................... 6
   3.1   Statements on the Project ........................................................................ 6
   3.2   Statements on Authority and Capacity ..................................................... 6
   3.3   USDOT FHWA Reliance ......................................................................... 7
   3.4   Project Delivery. ...................................................................................... 7
   3.5   Rights and Powers Affecting the Project. .................................................. 7
   3.6   Subaward to Designated Subrecipient ...................................................... 8
   3.7   Designated Subrecipient Statements and Responsibilities ......................... 8
Article 4 AWARD AMOUNT, OBLIGATION, AND TIME PERIODS ................... 8
   4.1   Federal Award Amount ............................................................................ 8
   4.2   Federal Obligations. ................................................................................. 8
   4.3   Budget Period. ......................................................................................... 9
   4.4   Period of Performance. ........................................................................... 10
Article 5 STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES ..... 10
   5.1   Notification Requirement ........................................................................ 10
   5.2   Scope and Statement of Work Changes .................................................. 10
   5.3   Schedule Changes ................................................................................. 10
   5.4   Budget Changes. .................................................................................... 11
   5.5   FHWA Acceptance of Changes. .............................................................. 12
Article 6 GENERAL REPORTING TERMS ........................................................... 12
   6.1   Report Submission ................................................................................. 12
   6.2   Alternative Reporting Methods ............................................................... 12
Article 7 PROGRESS AND FINANCIAL REPORTING ......................................... 12
   7.1   Project Progress and Financial Reports and Recertifications. ................... 12
   7.2   Final Progress Reports and Financial Information ................................... 13
Article 8 PERFORMANCE REPORTING ............................................................. 13
   8.1   Baseline Performance Measurement. ...................................................... 13
   8.2   Post-construction Performance Measurement. ......................................... 14
   8.3   Project Outcomes Report. ....................................................................... 14
   8.4   General Performance Measures .............................................................. 14
   8.5   Performance Reporting Survival. ............................................................ 15
Article 9 NONCOMPLIANCE AND REMEDIES ................................................. 15
   9.1   Noncompliance Determinations. ............................................................. 15
   9.2   Remedies. .............................................................................................. 15
   9.3   Other Oversight Entities ......................................................................... 16
Article 10 AGREEMENT TERMINATION............................................................ 16
   10.1   FHWA Termination................................................................................. 16
   10.2   Closeout Termination. ............................................................................. 17
   10.3   Post-Termination Adjustments ................................................................ 17
   10.4   Non-Terminating Events.......................................................................... 17

10.5    Other Remedies ................................................................................ 18
Article 11 MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS
.................................................................................................................................... 18
11.1    Recipient Monitoring and Record Retention. .......................................... 18
11.2    Financial Records and Audits. ............................................................... 18
11.3    Internal Controls ................................................................................... 19
11.4    USDOT Record Access ......................................................................... 19
11.5    Title 23 Oversight Responsibilities ........................................................ 19
Article 12 CONTRACTING AND SUBAWARDS ...................................................... 19
12.1    Minimum Wage Rates ........................................................................... 19
12.2    Buy America. ........................................................................................ 19
12.3    Small and Disadvantaged Business Requirements .................................... 19
12.4    Engineering and Design Services ............................................................ 20
12.5    Prohibition on Certain Telecommunications and Video Surveillance Services or
Equipment. ..................................................................................................... 20
12.6    Pass-through Entity Responsibilities ...................................................... 20
12.7    Subaward and Contract Authorization. ................................................... 20
Article 13 COSTS, PAYMENTS, AND UNEXPENDED FUNDS .............................. 20
13.1    Limitation of Federal Award Amount. .................................................... 20
13.2    Projects Costs. ...................................................................................... 21
13.3    Timing of Project Costs. ........................................................................ 21
13.4    Recipient Recovery of Federal Funds ..................................................... 21
13.5    Unexpended Federal Funds .................................................................... 21
13.6    Timing of Payments to the Recipient. ..................................................... 21
13.7    Payment Method. .................................................................................. 21
13.8    Information Supporting Expenditures. ..................................................... 22
13.9    Reimbursement Frequency .................................................................... 22
Article 14 LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY .................... 22
14.1    Liquidation of Recipient Obligations. ..................................................... 22
Article 15 AGREEMENT MODIFICATIONS .............................................................. 23
15.1    Bilateral Modifications .......................................................................... 23
15.2    Unilateral Contact Modifications. ........................................................... 23
15.3    FHWA Unilateral Modifications. ........................................................... 23
15.4    Other Modifications. ............................................................................. 23
Article 16 Civil Rights and Title VI .......................................................................... 23
16.1    Title VI. ............................................................................................... 23
16.2    Legacy Infrastructure and Facilities. ...................................................... 24
Article 17 CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE ..................... 24
17.1    Critical Infrastructure Security and Resilience. ........................................ 24
Article 18 FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL
POLICY REQUIREMENTS ....................................................................................... 25
18.1    Uniform Administrative Requirements for Federal Awards ........................ 25
18.2    Federal Law and Public Policy Requirements. ......................................... 25
18.3    Implementation of Executive Order 14025 .............................................. 25
18.4    Implementation of Executive Order 14173 .............................................. 25
18.5    Federal Freedom of Information Act. ...................................................... 26

18.6     History of Performance ................................................................................... 26
18.7     Whistleblower Protection................................................................................ 26
18.8     External Award Terms and Obligations........................................................ 26
18.9     Incorporated Certifications ............................................................................ 27
Article 19 ASSIGNMENT ............................................................................................. 27
19.1     Assignment Prohibited. ................................................................................. 27
Article 20 WAIVER ....................................................................................................... 27
20.1     Waivers........................................................................................................... 27
Article 21 ADDITIONAL TERMS AND CONDITIONS ............................................. 27
21.1     Effect of Urban or Rural Designation............................................................ 27
21.2     Disclaimer of Federal Liability..................................................................... 28
21.3     Relocation and Real Property Acquisition..................................................... 28
21.4     Equipment Disposition. ................................................................................. 28
21.5     Environmental Review................................................................................... 28
21.6     Railroad Coordination ................................................................................... 30
Article 22 MANDATORY AWARD INFORMATION ................................................. 30
22.1     Information Contained in a Federal Award ................................................... 30
22.2     Federal Award Identification Number. .......................................................... 30
22.3     Recipient's Unique Entity Identifier. ............................................................ 30
Article 23 CONSTRUCTION AND DEFINITIONS ..................................................... 31
23.1     Schedules ....................................................................................................... 31
23.2     Exhibits........................................................................................................... 31
23.3     Construction................................................................................................... 31
23.4     Integration ...................................................................................................... 31
23.5     Definitions ..................................................................................................... 32
Article 24 AGREEMENT EXECUTION AND EFFECTIVE DATE ........................... 32
24.1     Counterparts................................................................................................... 32
24.2     Effective Date ................................................................................................ 32

**Index of Definitions**

Environmental Review Entity.................................................................................................... 29
Federal Share ........................................................................................................................... 12
FHWA .......................................................................................................................................... 6
General Terms and Conditions ............................................................................................... 32
Grant ......................................................................................................................................... 32
Grant Amount ........................................................................................................................... 32
Grant Program .......................................................................................................................... 32
Program Statute ....................................................................................................................... 32
Project ....................................................................................................................................... 32
Project Closeout ...................................................................................................................... 17
Project Cost Savings ............................................................................................................... 11
Technical Application .............................................................................................................. 32
Title VI....................................................................................................................................... 24

# GENERAL TERMS AND CONDITIONS

These General Terms and Conditions are incorporated by reference in this grant agreement under the Grant Program. The term "Recipient" is defined in this grant agreement. This grant agreement includes schedules A through H. The grant agreement may include special terms and conditions in grant agreement articles or schedules.

## ARTICLE 1
## PURPOSE

1.1 **Purpose.** The purpose of this award is to fund the eligible project defined in this grant agreement that has been selected to receive an award for the Grant Program. The parties will accomplish that purpose by achieving the following objectives:

(1) timely completing the Project; and

(2) ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule E.

## ARTICLE 2
## FHWA ROLE

2.1 **Federal Highway Administration (FHWA) Responsibilities.**

(a) The FHWA is the operating administration under the United States Department of Transportation ("USDOT") responsible for the administration of the Grant Program, the approval and execution of this grant agreement, and any modifications to this grant agreement under section 15.1.

## ARTICLE 3
## RECIPIENT ROLE

3.1 **Statements on the Project.** The Recipient states that:

(1) all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2) schedule E documents all material changes in the information contained in that application.

3.2 **Statements on Authority and Capacity.** The Recipient states that:

(1)     it has the authority to receive Federal financial assistance under this grant agreement;

(2)     it has the legal authority to complete the Project;

(3)     it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this grant agreement;

(4)     not less than the difference between the total eligible project costs listed in section 3 of schedule D and the Grant Amount listed in section 1 of schedule D is committed to fund the Project;

(5)     it has sufficient funds available to ensure that infrastructure completed or improved under this grant agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)     the individual executing this grant agreement on behalf of the Recipient has authority to enter this grant agreement and make the statements in this article 3 and in section 18.9 on behalf of the Recipient.

**3.3     USDOT FHWA Reliance.** The Recipient acknowledges that:

(1)     the USDOT FHWA relied on statements of fact in the Technical Application to select the Project to receive this award;

(2)     the USDOT FHWA relied on statements of fact in both the Technical Application and this grant agreement to determine that the Recipient and the Project are eligible under the terms of the Notice of Funding Opportunity ("NOFO") in section 7 of schedule D.

(3)     the USDOT FHWA's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4     Project Delivery.**

(a) The Recipient shall complete the Project under the terms of this grant agreement.

(b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to the Project.

**3.5     Rights and Powers Affecting the Project.**

(a) The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this grant agreement without written approval of the FHWA.

(b) The Recipient shall act promptly, in a manner acceptable to the FHWA, to

(4)     documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)     describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 18
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**18.1     Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**18.2     Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.

**18.3     Implementation of Executive Order 14025.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), Schedule H, Labor and Work, documents the consideration of job quality and labor rights, standards, and protections related to the Project.

**18.4     Implementation of Executive Order 14173**

(a) Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(b) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal

# EXHIBIT 5

Federal Transit Administration
Master Agreement (Apr. 25, 2025)
(Excerpts)

**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**FEDERAL TRANSIT ADMINISTRATION**

**MASTER AGREEMENT**

**For Federal Transit Administration Agreements authorized by**
**49 U.S.C. chapter 53 and Title 23, United States Code (Highways), as amended by**
**the Infrastructure Investment and Jobs Act of 2021 (IIJA), the Fixing America's Surface**
**Transportation (FAST) Act, the Moving Ahead for Progress in the 21st Century Act**
**(MAP-21), the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy**
**for Users (SAFETEA-LU), the SAFETEA-LU Technical Corrections Act of 2008, or other**
**federal laws that FTA administers.**

**FTA MA(33)**
**April 25, 2025**

http://www.transit.dot.gov

# TABLE OF CONTENTS

Table of Contents ................................................................................................................................ i

Preface ............................................................................................................................................... 1

    Statutory Authorities ..................................................................................................................... 1

    Purpose of this Master Agreement ............................................................................................... 1

Generally Applicable Provisions ...................................................................................................... 3

    Section 1.        Terms of this Master Agreement and Compliance. ....................................... 3

    Section 2.        Definitions. ..................................................................................................... 4

    Section 3.        Implementation. ........................................................................................... 12

    Section 4.        Ethics, Political Activity, Disqualification, and Certain Criminal Activity. ............... 19

    Section 5.        Federal Assistance. ....................................................................................... 27

    Section 6.        Non-Federal Share. ...................................................................................... 28

    Section 7.        Payments to the Recipient. ........................................................................... 30

    Section 8.        Records and Reports Related to the Award and the Underlying Agreement. ............ 41

    Section 9.        Record Retention and Access to Sites of Performance. ............................... 47

    Section 10.     Completion, Audit, Settlement, and Closeout. ............................................. 48

    Section 11.     Right of the Federal Government to Terminate. ........................................... 50

    Section 12.     Civil Rights. ................................................................................................. 51

    Section 13.     Planning. ...................................................................................................... 59

    Section 14.     Private Enterprise. ........................................................................................ 60

    Section 15.     Preference for United States Products and Services. .................................... 61

    Section 16.     Procurement. ................................................................................................ 62

    Section 17.     Patent Rights. ............................................................................................... 68

    Section 18.     Rights in Data and Copyrights. ................................................................... 69

    Section 19.     Use of Real Property, Equipment, and Supplies. ........................................ 72

    Section 20.     Transit Asset Management. .......................................................................... 77

    Section 21.     Insurance. .................................................................................................... 77

    Section 22.     Relocation and Real Property. ..................................................................... 78

    Section 23.     Construction. ................................................................................................ 79

    Section 24.     Employee Protections. ................................................................................. 80

    Section 25.     Early Systems Work Agreement. ................................................................. 82

    Section 26.     Environmental Protections. .......................................................................... 84

    Section 27.     State Management and Monitoring Systems. ................................................ 87

    Section 28.     Charter Service. ........................................................................................... 87

Section 29.    School Bus Operations. ........................................................................................... 88

Section 30.    Geographic Information and Related Spatial Data. .................................................. 88

Section 31.    Federal "$1 Coin" Requirements. .............................................................................. 89

Section 32.    Public Transportation Safety. ..................................................................................... 89

Section 33.    Motor Carrier Safety. .................................................................................................. 89

Section 34.    Safe Operation of Motor Vehicles. ............................................................................ 90

Section 35.    Substance Abuse. ........................................................................................................ 91

Section 36.    Protection of Sensitive Security and Other Sensitive Information. ............................ 92

Section 37.    Special Notification Requirements for States. ........................................................... 92

Section 38.    Freedom of Information. ............................................................................................. 93

Section 39.    Disputes, Breaches, Defaults, and Litigation. ............................................................ 94

Section 40.    Amendments to the Underlying Agreement. .............................................................. 95

Section 41.    FTA's Transit Award Management System (TrAMS). .............................................. 95

Section 42.    Information Obtained through Internet Links. ........................................................... 96

Section 43.    Severability. ............................................................................................................... 96

Special Provisions for Specific Programs ............................................................................................. 97

Section 44.    Special Provisions for All Public Transportation Innovation, Technical Assistance or Workforce Development Programs. .................................................................................................... 97

Section 45.    Special Provisions for the State Safety Oversight Grant Program. ............................ 99

Section 46.    Special Provisions for the State Infrastructure Bank (SIB) Program. ........................ 99

Section 47.    Special Provisions for the TIFIA and RRIF Programs. ........................................... 100

Section 48.    Special Provisions for the Joint FTA–FRA Program. .............................................. 101

Appendix A Tribal Transit Program—Applicable Provisions ............................................................. 103

# UNITED STATES DEPARTMENT OF TRANSPORTATION
## FEDERAL TRANSIT ADMINISTRATION

## MASTER AGREEMENT

## PREFACE

### Statutory Authorities

This is the official Federal Transit Administration (FTA) Master Agreement that applies to each Underlying Agreement (Grant Agreement, Cooperative Agreement, Loan Agreement, Loan Guarantee Agreement, or Line of Credit Agreement) for a specific Award authorized by:

(a)     Federal transit laws, 49 U.S.C. chapter 53, as amended, including the following:

      (1)     The Infrastructure Investment and Jobs Act of 2021 (IIJA), Public Law No. 117-58, November 15, 2021, and other authorizing legislation that may be enacted;

      (2)     The Fixing America's Surface Transportation (FAST) Act, Public Law No. 114-94, December 4, 2015;

      (3)     The Moving Ahead for Progress in the 21st Century Act (MAP-21), Public Law No. 112- 141, July 6, 2012, as amended by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Public Law No. 114-41, July 31, 2015; and

      (4)     The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Public Law No. 109-59, August 10, 2005, as amended by the SAFETEA-LU Technical Corrections Act of 2008, Public Law No 110-244, June 6, 2008.

(b)     Continuing Resolutions or Other Appropriations Resolutions or Acts funding the Department of Transportation during Fiscal Year 2025.

(c)     Title 23, United States Code (Highways).

(d)     Other federal legislation that FTA administers, as FTA so determines.

### Purpose of this Master Agreement

This FTA Master Agreement contains the standard terms and conditions that apply to the Underlying Agreement with the Recipient, which Underlying Agreement may take the form of an:

(a)   FTA Grant Agreement, including an FTA Grant Agreement for an award of federal assistance under the Tribal Transit Program;

(b)   FTA Cooperative Agreement; or

(c)   Transportation Infrastructure Finance Innovation Act (TIFIA) or Railroad Rehabilitation and Improvement Financing (RRIF) Loan, Loan Guarantee, Line of Credit, Master Credit Agreement for a Project overseen by FTA, or State Infrastructure Bank (SIB) Cooperative Agreement.

THEREFORE, in consideration of the mutual covenants, promises, and representations herein, FTA and the Recipient agree as follows:

# GENERALLY APPLICABLE PROVISIONS

**Section 1.    Terms of this Master Agreement and Compliance.**

(a)     The Recipient must comply with all applicable federal laws, regulations, and requirements, and should follow applicable federal guidance, except as FTA determines otherwise in writing.

(b)     To assure compliance with federal laws, regulations, and requirements, the Recipient must take measures to assure that other participants in its Underlying Agreements (e.g., Third Party Participants) comply with applicable federal laws, regulations, and requirements, and follow applicable federal guidance, except as FTA determines otherwise in writing.

(c)     FTA may take enforcement action if the Recipient or a Third Party Participant violates an applicable federal law, regulation, or requirement, or does not follow applicable federal guidance.

(d)     FTA and the Recipient agree that not every provision of this Master Agreement will apply to every Recipient or Underlying Agreement.

   (1)     FTA has divided this Master Agreement into the "Preface," "Generally Applicable Provisions," and "Special Provisions for Specific Programs."

   (2)     This Master Agreement has an Appendix A illustrating the specific provisions of this Master Agreement that apply to the Tribal Transit Programs.

   (3)     Criteria determining which federal laws, regulations, requirements, and guidance apply include the type of Award, the federal law authorizing federal assistance for the Award, the federal law, regulations, or requirements governing how the Award must be implemented, the federal guidance pertaining to the Award, and the Recipient's legal status as a "state," "state instrumentality," a "local government," a federally recognized Indian Tribe (Indian Tribe), a "private nonprofit entity," a "private for-profit entity," or an individual.

(e)     As provided in federal laws, regulations, requirements, and guidance, FTA will enforce only those federal laws, regulations, requirements, and guidance that apply to the specific FTA Recipient, its Third Party Participants, or to any Project and related activities encompassed in the Award, the accompanying Underlying Agreement, and any Amendments thereto.

(f)     Each provision of this Master Agreement must be interpreted in context with all other provisions of this Master Agreement and the Underlying Agreement. If a single provision is read apart from the rest of this Master Agreement or the Underlying Agreement, that provision might not convey the extent of the Recipient's responsibility to comply with the requirements of this Master Agreement and the Underlying Agreement.

(g)     This Master Agreement does not have an Expiration Date. This Master Agreement continues to apply to the Recipient and its Underlying Agreement, until modified or superseded by a more recently enacted or issued applicable federal law, regulation, requirement, or guidance, or Amendment to this Master Agreement or the Underlying Agreement.

**Section 2.     Definitions.**

(a)     *List of Definitions*. In addition to the definitions provided in 49 U.S.C. § 5302, as amended, or in previous legislation if circumstances may require, the Recipient agrees that the following definitions apply:

(1)     *Application* means the request for federal assistance submitted that is signed and dated by the Applicant or an official authorized to act on the behalf of the Applicant, and includes all explanatory, supporting, and supplementary documents filed with FTA by or on behalf of the Applicant, and has been reviewed by FTA staff and addresses FTA's comments and concerns. An application for federal assistance in the form of a Grant or Cooperative Agreement must be submitted in FTA's Transit Award Management System (TrAMS).

(2)     *Approval*, unless FTA determines otherwise in writing, means a written statement of an authorized federal official transmitted electronically or in typewritten hard copy expressly permitting the Recipient to take or omit an action in connection with its Underlying Agreement, and signed by a federal official authorized to permit the Recipient to take or omit an action that may not be taken or omitted without the Federal Government's permission. Approval does not mean permission to take or omit a similar action other than the specific action for which approval was given and does not include an oral permission or interpretation, which has no legal force, authority, or effect. For purposes of this Master Agreement, the definition of "approval" also applies to "concurrence" and "waiver."

(3)     *Associated Transit Improvement* means, with respect to a Project or an area to be served by a Project, an activity that is designed to enhance transit service or use and that is physically or functionally related to transit facilities.

(2)     The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, as amended, 42 U.S.C. § 4541, et seq.; and

(3)     The Public Health Service Act, as amended, 42 U.S.C. §§ 290dd – 290dd-2.

(j)     *Access to Services for Persons with Limited English Proficiency*. The Recipient agrees to provide meaningful access to public transportation services to persons with limited understanding of English to comply with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, *et seq.*, and its implementing regulation at 28 CFR § 42.405(d), and appliable U.S. Department of Justice guidance.

(k)     *Other Nondiscrimination Laws, Regulations, Requirements, and Guidance*. The Recipient agrees to comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination.

(l)     *Remedies*. Remedies for failure to comply with applicable federal Civil Rights laws, regulations, and requirements, and failure to follow guidance may be enforced as provided in those federal laws, regulations, requirements, or guidance.

(m)     *Federal Law and Public Policy Requirements*. The Recipient shall ensure that Federal funding is expended in full accordance with the U.S. Constitution, Federal Law, and statutory and public policy requirements: including, but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(n)     *Federal Anti-Discrimination*.

(1)     Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(2)     Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

# EXHIBIT 6

Federal Transit Administration Master
Agreement (Tracked Changes) (Apr. 25, 2025)
(Excerpts)

**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
FEDERAL TRANSIT ADMINISTRATION**


**MASTER AGREEMENT**

**Commented [A1]:** This tracked-changes document is provided as a convenience to the reader, to show clearly the differences between versions of the Federal Transit Administration's Master Agreement. This document does not have the force and effect of law and is not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.


**For Federal Transit Administration Agreements authorized by
49 U.S.C. chapter 53 and Title 23, United States Code (Highways), as amended by
the Infrastructure Investment and Jobs Act of 2021 (IIJA), the Fixing America's Surface
Transportation (FAST) Act, the Moving Ahead for Progress in the 21st Century Act
(MAP-21), the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy
for Users (SAFETEA-LU), the SAFETEA-LU Technical Corrections Act of 2008, or other
federal laws that FTA administers.**


**FTA MA(3~~2~~3)**
~~March 26, 2025~~DATE

http://www.transit.dot.gov

Table of Contents .......................................................................................................................... i

Preface ....................................................................................................................................... 1

    Statutory Authorities ............................................................................................................. 1

    Purpose of this Master Agreement ........................................................................................ 1

Generally Applicable Provisions .............................................................................................. 3

    Section 1.    Terms of this Master Agreement and Compliance. ......................................... 3

    Section 2.    Definitions. ...................................................................................................... 4

    Section 3.    Implementation. ............................................................................................ 12

    Section 4.    Ethics, Political Activity, Disqualification, and Certain Criminal Activity. .............. 19

    Section 5.    Federal Assistance. ........................................................................................ 27

    Section 6.    Non-Federal Share. ....................................................................................... 28

    Section 7.    Payments to the Recipient. ............................................................................ 30

    Section 8.    Records and Reports Related to the Award and the Underlying Agreement. ............. 41

    Section 9.    Record Retention and Access to Sites of Performance. ............................... 47

    Section 10.    Completion, Audit, Settlement, and Closeout. ............................................ 48

    Section 11.    Right of the Federal Government to Terminate. .......................................... 50

    Section 12.    Civil Rights. ................................................................................................... 51

    Section 13.    Planning. ....................................................................................................... 59

    Section 14.    Private Enterprise. ........................................................................................ 60

    Section 15.    Preference for United States Products and Services. .................................. 61

    Section 16.    Procurement. ................................................................................................. 62

    Section 17.    Patent Rights. ................................................................................................ 68

    Section 18.    Rights in Data and Copyrights. .................................................................... 69

    Section 19.    Use of Real Property, Equipment, and Supplies. ........................................ 72

    Section 20.    Transit Asset Management. ........................................................................... 77

    Section 21.    Insurance. ...................................................................................................... 77

    Section 22.    Relocation and Real Property ....................................................................... 78

    Section 23.    Construction. ................................................................................................. 79

    Section 24.    Employee Protections. ................................................................................. 80

    Section 25.    Early Systems Work Agreement. .................................................................. 82

    Section 26.    Environmental Protections. .......................................................................... 84

    Section 27.    State Management and Monitoring Systems. ............................................... 87

    Section 28.    Charter Service. ............................................................................................ 87

Section 29.    School Bus Operations. ........................................................................... 88

Section 30.    Geographic Information and Related Spatial Data. ................................... 88

Section 31.    Federal "$1 Coin" Requirements. ......................................................... 89

Section 32.    Public Transportation Safety. ................................................................ 89

Section 33.    Motor Carrier Safety. ............................................................................ 89

Section 34.    Safe Operation of Motor Vehicles. ....................................................... 90

Section 35.    Substance Abuse. .................................................................................. 91

Section 36.    Protection of Sensitive Security and Other Sensitive Information. ........... 92

Section 37.    Special Notification Requirements for States. ........................................ 92

Section 38.    Freedom of Information. ........................................................................ 93

Section 39.    Disputes, Breaches, Defaults, and Litigation. ........................................ 94

Section 40.    Amendments to the Underlying Agreement. ........................................... 95

Section 41.    FTA's Transit Award Management System (TrAMS). ............................ 95

Section 42.    Information Obtained through Internet Links. ......................................... 96

Section 43.    Severability. ......................................................................................... 96

Special Provisions for Specific Programs .................................................................... 97

Section 44.    Special Provisions for All Public Transportation Innovation, Technical Assistance or Workforce Development Programs. ................................................................... 97

Section 45.    Special Provisions for the State Safety Oversight Grant Program. ............ 99

Section 46.    Special Provisions for the State Infrastructure Bank (SIB) Program. ........ 99

Section 47.    Special Provisions for the TIFIA and RRIF Programs. ........................... 100

Section 48.    Special Provisions for the Joint FTA–FRA Program. .............................. 101

Appendix A Tribal Transit Program—Applicable Provisions ...................................... 103

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**FEDERAL TRANSIT ADMINISTRATION**

**MASTER AGREEMENT**

**PREFACE**

**Statutory Authorities**

This is the official Federal Transit Administration (FTA) Master Agreement that applies to each Underlying Agreement (Grant Agreement, Cooperative Agreement, Loan Agreement, Loan Guarantee Agreement, or Line of Credit Agreement) for a specific Award authorized by:

(a)      Federal transit laws, 49 U.S.C. chapter 53, as amended, including the following:

        (1)      The Infrastructure Investment and Jobs Act of 2021 (IIJA), Public Law No. 117-58, November 15, 2021, and other authorizing legislation that may be enacted;

        (2)      The Fixing America's Surface Transportation (FAST) Act, Public Law No. 114-94, December 4, 2015;

        (3)      The Moving Ahead for Progress in the 21st Century Act (MAP-21), Public Law No. 112- 141, July 6, 2012, as amended by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Public Law No. 114-41, July 31, 2015; and

        (4)      The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Public Law No. 109-59, August 10, 2005, as amended by the SAFETEA-LU Technical Corrections Act of 2008, Public Law No 110-244, June 6, 2008.

(b)      Continuing Resolutions or Other Appropriations Resolutions or Acts funding the Department of Transportation during Fiscal Year 2025.

(c)      Title 23, United States Code (Highways).

(d)      Other federal legislation that FTA administers, as FTA so determines.

**Purpose of this Master Agreement**

This FTA Master Agreement contains the standard terms and conditions that apply to the Underlying Agreement with the Recipient, which Underlying Agreement may take the form of an:

(a) FTA Grant Agreement, including an FTA Grant Agreement for an award of federal assistance under the Tribal Transit Program;

(b) FTA Cooperative Agreement; or

(c) Transportation Infrastructure Finance Innovation Act (TIFIA) or Railroad Rehabilitation and Improvement Financing (RRIF) Loan, Loan Guarantee, Line of Credit, Master Credit Agreement for a Project overseen by FTA, or State Infrastructure Bank (SIB) Cooperative Agreement.

THEREFORE, in consideration of the mutual covenants, promises, and representations herein, FTA and the Recipient agree as follows:

**GENERALLY APPLICABLE PROVISIONS**

**Section 1.**     **Terms of this Master Agreement and Compliance.**

(a)     The Recipient must comply with all applicable federal laws, regulations, and requirements, and should follow applicable federal guidance, except as FTA determines otherwise in writing.

(b)     To assure compliance with federal laws, regulations, and requirements, the Recipient must take measures to assure that other participants in its Underlying Agreements (e.g., Third Party Participants) comply with applicable federal laws, regulations, and requirements, and follow applicable federal guidance, except as FTA determines otherwise in writing.

(c)     FTA may take enforcement action if the Recipient or a Third Party Participant violates an applicable federal law, regulation, or requirement, or does not follow applicable federal guidance.

(d)     FTA and the Recipient agree that not every provision of this Master Agreement will apply to every Recipient or Underlying Agreement.

    (1)     FTA has divided this Master Agreement into the "Preface," "Generally Applicable Provisions," and "Special Provisions for Specific Programs."

    (2)     This Master Agreement has an Appendix A illustrating the specific provisions of this Master Agreement that apply to the Tribal Transit Programs.

    (3)     Criteria determining which federal laws, regulations, requirements, and guidance apply include the type of Award, the federal law authorizing federal assistance for the Award, the federal law, regulations, or requirements governing how the Award must be implemented, the federal guidance pertaining to the Award, and the Recipient's legal status as a "state," "state instrumentality," a "local government," a federally recognized Indian Tribe (Indian Tribe), a "private nonprofit entity," a "private for-profit entity," or an individual.

(e)     As provided in federal laws, regulations, requirements, and guidance, FTA will enforce only those federal laws, regulations, requirements, and guidance that apply to the specific FTA Recipient, its Third Party Participants, or to any Project and related activities encompassed in the Award, the accompanying Underlying Agreement, and any Amendments thereto.

(f)     Each provision of this Master Agreement must be interpreted in context with all other provisions of this Master Agreement and the Underlying Agreement. If a single provision is read apart from the rest of this Master Agreement or the Underlying Agreement, that provision might not convey the extent of the Recipient's responsibility to comply with the requirements of this Master Agreement and the Underlying Agreement.

(g)     This Master Agreement does not have an Expiration Date. This Master Agreement continues to apply to the Recipient and its Underlying Agreement, until modified or superseded by a more recently enacted or issued applicable federal law, regulation, requirement, or guidance, or Amendment to this Master Agreement or the Underlying Agreement.

**Section 2.     Definitions.**

(a)     *List of Definitions*. In addition to the definitions provided in 49 U.S.C. § 5302, as amended, or in previous legislation if circumstances may require, the Recipient agrees that the following definitions apply:

   (1)     *Application* means the request for federal assistance submitted that is signed and dated by the Applicant or an official authorized to act on the behalf of the Applicant, and includes all explanatory, supporting, and supplementary documents filed with FTA by or on behalf of the Applicant, and has been reviewed by FTA staff and addresses FTA's comments and concerns. An application for federal assistance in the form of a Grant or Cooperative Agreement must be submitted in FTA's Transit Award Management System (TrAMS).

   (2)     *Approval*, unless FTA determines otherwise in writing, means a written statement of an authorized federal official transmitted electronically or in typewritten hard copy expressly permitting the Recipient to take or omit an action in connection with its Underlying Agreement, and signed by a federal official authorized to permit the Recipient to take or omit an action that may not be taken or omitted without the Federal Government's permission. Approval does not mean permission to take or omit a similar action other than the specific action for which approval was given and does not include an oral permission or interpretation, which has no legal force, authority, or effect. For purposes of this Master Agreement, the definition of "approval" also applies to "concurrence" and "waiver."

   (3)     *Associated Transit Improvement* means, with respect to a Project or an area to be served by a Project, an activity that is designed to enhance transit service or use and that is physically or functionally related to transit facilities.

(1)    The Drug Abuse Office and Treatment Act of 1972, as amended, 21 U.S.C. § 1101, et seq.;

(2)    The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, as amended, 42 U.S.C. § 4541, et seq.; and

(3)    The Public Health Service Act, as amended, 42 U.S.C. §§ 290dd – 290dd-2.

(j)    *Access to Services for Persons with Limited English Proficiency*. The Recipient agrees to provide meaningful access to public transportation services to persons with limited understanding of English to comply with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, *et seq.*, and its implementing regulation at 28 CFR § 42.405(d), and appliable U.S. Department of- Justice guidance.

(k)    *Other Nondiscrimination Laws, Regulations, Requirements, and Guidance*. The Recipient agrees to comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination.

(l)    *Remedies*. Remedies for failure to comply with applicable federal Civil Rights laws, regulations, and requirements, and failure to follow guidance may be enforced as provided in those federal laws, regulations, requirements, or guidance.

(m)    *~~Promoting Free Speech and Religious Liberty~~Federal Law and Public Policy Requirements*. The ~~F~~Recipient shall ensure that Federal funding is expended in full accordance with the U.S. Constitution, Federal Law, and statutory and public policy requirements: including, but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(n)    *Federal Anti-Discrimination*.

(1)    Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(2)    Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the Recipient certifies that it does not operate any programs

# EXHIBIT 7

Federal Aviation Administration
Airport Infrastructure Grant
Template Agreement (May 6, 2025)
(Excerpts)



**U.S. Department
of Transportation
Federal Aviation
Administration**

### FY 2025 AIRPORT INFRASTRUCTURE GRANT
### *TEMPLATE ONLY ** GRANT AGREEMENT ** TEMPLATE ONLY*
### Part I - Offer

Federal Award Offer Date {{DateTime_es_:signer1:calc(now()):format(date," mmmm d, yyyy")}}

Airport/Planning Area [Selection Criteria: Airport Name or Planning Area]

Airport Infrastructure Grant Number [Selection Criteria: Grant Number Formatted]

Unique Entity Identifier [Selection Criteria: DUNS Number]

TO: [Selection Criteria: Sponsor Name]

**(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)**

[Please Enter Co-Sponsor Name(s)]

FROM: **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated [Selection Criteria: Project Application Date], for a grant of Federal funds for a project at or associated with the [Selection Criteria: Airport Name or Planning Area], which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the [Selection Criteria: Airport Name or Planning Area] (herein called the "Project") consisting of the following:

[Selection Criteria: Project Description]

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Infrastructure Investment and Jobs Act (IIJA) (Public Law number (P.L.) 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the attached Grant Assurances dated April 2025, interpreted, and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

1

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay [%Selection Criteria: Federal Share Percent%] % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $[Selection Criteria: Obligation Amount].

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $[Selection Criteria: Planning Amount] for planning
   $[Selection Criteria: Noise Amount] airport development or noise program implementation; and,
   $[Selection Criteria: Land Acquisition Amount] for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period and as stated in 49 U.S.C § 47142(b). Eligible project-related costs incurred on or after November 15, 2021, that comply with all Federal funding procurement requirements and FAA standards are allowable costs.

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which Sponsors are authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c. Close Out and Termination

      Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with

the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a) (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with P.L. 117-58, Division J, Title VIII  49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, IIJA (P.L. 117-58), and the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

32. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

33. **National Airspace System Requirements.**

(a) The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

(b) If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

1) additional conditions on the award;
2) consistent with 49 U.S.C. chapter 471, any remedy permitted under 2 CFR 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs; requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or
3) any other remedy legally available.

(c) In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

(d) The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

34. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to FAA requests received prior to February 1, 2025.

35. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration.** The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

# EXHIBIT 8

Maritime Administration Port Infrastructure
Development Program General Terms and
Conditions (Mar. 31, 2025)
(Excerpts)

**U.S. DEPARTMENT OF TRANSPORTATION**
**MARITIME ADMINISTRATION**

**GENERAL TERMS AND CONDITIONS UNDER THE**
**FISCAL YEAR 2024 PORT INFRASTRUCTURE DEVELOPMENT PROGRAM**
**GRANTS**

**March 31, 2025**

# Table of Contents

Article 1 Purpose.................................................................................................................... 6
   1.1   Purpose. ......................................................................................................... 6
Article 2 MARAD Role ........................................................................................................ 7
   2.1   Administration. .............................................................................................. 7
   2.2   MARAD Program Contacts. .......................................................................... 7
Article 3 Recipient Role........................................................................................................ 7
   3.1   Statements on the Project. ............................................................................. 7
   3.2   Statements on Authority and Capacity. ......................................................... 7
   3.3   MARAD Reliance. ........................................................................................ 8
   3.4   Project Delivery. ........................................................................................... 8
   3.5   Rights and Powers Affecting the Project. ..................................................... 8
   3.6   Notification of Changes to Key Personnel. ................................................... 8
Article 4 Award Amount, Obligation, and Time Periods ..................................................... 9
   4.1   Federal Award Amount. ................................................................................ 9
   4.2   Federal Funding Source. ............................................................................... 9
   4.3   Federal Obligations. ..................................................................................... 9
Article 5 Statement of Work, Schedule, and Budget Changes ............................................. 9
   5.1   Change Notification Requirement. ................................................................ 9
   5.2   Scope and Statement of Work Changes. ....................................................... 9
   5.3   Schedule Changes. ...................................................................................... 10
   5.4   Budget Changes. ......................................................................................... 10
   5.5   MARAD Acceptance of Changes. ............................................................... 11
Article 6 General Reporting Terms..................................................................................... 11
   6.1   Report Submission. ..................................................................................... 11
   6.2   Alternative Reporting Methods. .................................................................. 11
   6.3   Paperwork Reduction Act Notice. ............................................................... 11
Article 7 Progress and Financial Reporting ....................................................................... 12
   7.1   Quarterly Project Progress Reports and Recertifications. ........................... 12
   7.2   Final Progress Reports and Financial Information ....................................... 12
Article 8 Performance Reporting ........................................................................................ 12
   8.1   Baseline Performance Measurement. .......................................................... 12
   8.2   Post-construction Performance Measurement.............................................. 12
   8.3   Project Outcomes Narrative. ....................................................................... 13
Article 9 Civil Rights and Title VI ..................................................................................... 13
   9.1   Civil Rights and Title VI. ............................................................................ 13
   9.2   Legacy Infrastructure and Facilities. .......................................................... 14
Article 10 Critical Infrastructure Security and Resilience ................................................. 14
   10.1   Critical Infrastructure Security and Resilience. .......................................... 14
Article 11 PIDP Designations ............................................................................................ 15
   11.1   Effect of Urban or Rural Designation. ........................................................ 15
   11.2   Effect of Discretionary or CPF Designation…………………………………15
Article 12 Contracting and Subawards ............................................................................... 16
   12.1   Minimum Wage Rates. ................................................................................ 16
   12.2   Buy America. .............................................................................................. 16
   12.3   Small and Disadvantaged Business Requirements....................................... 17

    12.4   Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment. ........................................................................................................ 17
    12.5   Pass-through Entity Responsibilities ............................................................. 17
    12.6   Disclosing Conflict of Interest. .................................................................... 18
    12.7   Securing Logistics Information Data of the United States .............................. 18
Article 13 Noncompliance and Remedies ............................................................... 19
    13.1   Noncompliance Determinations. .................................................................. 19
    13.2   Remedies. ................................................................................................. 19
    13.3   Other Oversight Entities. ............................................................................ 20
Article 14 Agreement Termination ........................................................................ 20
    14.1   MARAD Termination. ................................................................................ 20
    14.2   Closeout Termination. ................................................................................ 21
    14.3   Post-Termination Adjustments ..................................................................... 21
    14.4   Non-Terminating Events. ............................................................................ 21
    14.5   Other Remedies. ........................................................................................ 22
Article 15 Costs, Payments, and Unexpended Funds ............................................... 22
    15.1   Limitation of Federal Award Amount ........................................................... 22
    15.2   Projects Costs. ........................................................................................... 22
    15.3   Timing of Project Costs. ............................................................................. 22
    15.4   Recipient Recovery of Federal Funds. .......................................................... 22
    15.5   Unexpended Federal Funds. ........................................................................ 23
    15.6   Timing of Payments to the Recipient. ........................................................... 23
    15.7   Payment Method. ....................................................................................... 23
    15.8   Information Supporting Expenditures. ........................................................... 23
    15.9   Reimbursement Request Timing Frequency. .................................................. 24
Article 16 Liquidation, Adjustments, and Funds Availability ................................... 24
    16.1   Liquidation of Recipient Obligations. ........................................................... 24
    16.2   Funds Cancellation. .................................................................................... 24
Article 17 Agreement Modifications ..................................................................... 25
    17.1   Bilateral Modifications. .............................................................................. 25
    17.2   Unilateral Contact Modifications. ................................................................ 25
    17.3   MARAD Unilateral Modifications. .............................................................. 25
    17.4   Other Modifications. .................................................................................. 25
Article 18 Federal Financial Assistance, Administrative, and National Policy Requirements .... 25
    18.1   Uniform Administrative Requirements for Federal Awards. ............................ 25
    18.2   Federal Law and Public Policy Requirements. ............................................... 25
    18.3   Federal Freedom of Information Act. ............................................................ 26
    18.4   History of Performance. .............................................................................. 26
    18.5   Whistleblower Protection. ........................................................................... 26
    18.6   External Award Terms and Obligations. ........................................................ 26
    18.7   Incorporated Certifications. ......................................................................... 27
    18.8   Labor and Work ........................................................................................ 27
Article 19 Monitoring, Financial Management, Controls, and Records ...................... 27
    19.1   Recipient Monitoring and Record Retention. ................................................ 27
    19.2   Financial Records and Audits. ..................................................................... 28
    19.3   Internal Controls. ....................................................................................... 28

    19.4   MARAD Record Access. ................................................................................ 28
Article 20 Notices ...................................................................................................... 29
    20.1   Form of Notice. ........................................................................................... 29
    20.2   Method of Notice to MARAD. ..................................................................... 29
    20.3   Method of Notice to Recipient. .................................................................... 29
    20.4   Recipient Contacts for Notice. ..................................................................... 30
    20.5   Additional Mandatory Notices to MARAD. ................................................ 30
    20.6   Scope of Notice Requirements. .................................................................... 30
Article 21 Information Requests ................................................................................ 30
    21.1   MARAD Information Requests. ................................................................... 30
Article 22 Assignment ............................................................................................... 31
    22.1   Assignment Prohibited. ................................................................................ 31
Article 23 Waiver ...................................................................................................... 31
    23.1   Waivers ......................................................................................................... 31
Article 24 Additional Terms and Conditions ............................................................ 31
    24.1   Disclaimer of Federal Liability. .................................................................. 31
    24.2   Relocation and Real Property Acquisition. ................................................. 31
    24.3   Real Property and Equipment Disposition. ................................................. 32
    24.4   Environmental Review. ................................................................................ 32
Article 25 Mandatory Award Information ................................................................. 33
    25.1   Information Contained in a Federal Award .................................................. 33
    25.2   Federal Award Identification Number. ........................................................ 34
    25.3   Recipient's Unique Entity Identifier. ........................................................... 34
    25.4   Budget Period. .............................................................................................. 34
    25.5   Period of Performance. ................................................................................. 34
Article 26 Construction and Definitions .................................................................... 34
    26.1   Schedules. ..................................................................................................... 34
    26.2   Exhibits. ........................................................................................................ 34
    26.3   Construction. ................................................................................................ 34
    26.4   Integration. ................................................................................................... 35
    26.5   Definitions. ................................................................................................... 35
    26.6   References to Times of Day. ........................................................................ 36
Article 27 Agreement Execution and Effective Date ................................................ 36
    27.1   Counterparts. ................................................................................................ 36
    27.2   Effective Date. .............................................................................................. 36

## Index of Definitions

Federal Share ............................................................................................................ 11
General Terms and Conditions ................................................................................. 34
MARAD ...................................................................................................................... 7
NOFO ......................................................................................................................... 6
OMB ......................................................................................................................... 12
PIDP Grant ............................................................................................................... 35
Program Statute ........................................................................................................ 34
Project ...................................................................................................................... 35
Project Closeout ....................................................................................................... 21
Project Cost Savings ................................................................................................ 10
Recipient ........................................................................................Project-Specific Recitals
Technical Application ............................................................................................... 35
Title VI ..................................................................................................................... 14
USDOT ....................................................................................................................... 6

**GENERAL TERMS AND CONDITIONS**

The Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), and the Consolidated Appropriations Act, 2024, Pub. L. No. 118-42 (Mar. 9, 2024) ("**Consolidated Appropriations Act, 2024**" or "**the Act**") appropriated funds to the United States Department of Transportation (the "**USDOT**") Maritime Administration ("**MARAD**") for fiscal year (FY) 2024 under the heading "Port Infrastructure Development Program." Of the amount appropriated, $500,000,000 is available to make grants to improve port facilities at coastal seaports, inland river ports, or Great Lakes ports. The Consolidated Appropriations Act, 2024 also appropriated $70,460,124 for Port Infrastructure Development Program (PIDP) grants for Community Project Funding (CPF), also known as Congressionally Directed Spending. The list of projects selected for CPF are found in the table entitled "Community Project Funding/Congressionally Directed Spending" included in the Act's accompanying explanatory statement. The MARAD program administering these funds is the Port Infrastructure Development Program (the "**PIDP**").

On December 27, 2023, MARAD posted a funding opportunity at Grants.gov with funding opportunity title "Port Infrastructure Development Program" and funding opportunity number MA-PID-24-001. The notice of funding opportunity posted at Grants.gov (the "**NOFO**") solicited applications for Federal financial assistance under the FY 2024 PIDP for the available FY 2024 PIDP discretionary funding.

These general terms and conditions are incorporated by reference in a project-specific agreement under the FY 2024 PIDP. The term "Recipient" is defined in the project-specific portion of the agreement. The project-specific portion of the agreement includes schedules A through H. The project-specific portion of the agreement may include special terms and conditions in project-specific articles.

**ARTICLE 1**
**PURPOSE**

1.1 **Purpose.** The purpose of this award is to make grants to improve port facilities at coastal seaports, inland river ports, or Great Lakes ports. The parties will accomplish that purpose by achieving the following objectives:

(1) timely completing the Project; and

(2) ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, if applicable, as modified by schedule D.

(c) Section 4.2 identifies the specific source or sources of funding for this award.

## ARTICLE 17
## AGREEMENT MODIFICATIONS

**17.1**    **Bilateral Modifications.** The parties may amend, modify, or supplement this agreement by mutual agreement in writing signed by MARAD and the Recipient. Either party may request to amend, modify, or supplement this agreement by written notice to the other party.

**17.2**    **Unilateral Contact Modifications.**

(a)    The Recipient may update the contacts who are listed in section 3 of schedule A by written notice to all of the MARAD contacts who are listed in section 5 of schedule A and section 2.2.

(b)    MARAD may update the contacts who are listed in section 5 of schedule A and section 2.2 by written notice to all of the Recipient contacts who are listed in section 3 of schedule A.

**17.3**    **MARAD Unilateral Modifications.**

(a)    MARAD may unilaterally modify this agreement to comply with Federal law, including the Program Statute.

(b)    To unilaterally modify this agreement under this section 17.3, MARAD must provide a notice to the Recipient that includes a description of the modification and state the date that the modification is effective.

**17.4**    **Other Modifications.** The parties shall not amend, modify, or supplement this agreement except as permitted under sections 17.1, 17.2, or 17.3. If an amendment, modification, or supplement is not permitted under section 17.1, not permitted under section 17.2, or not permitted under section 17.3, it is void.

## ARTICLE 18
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**18.1**    **Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 CFR Parts 200 and 1201.

**18.2**    **Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

(c) Pursuant to Section 3(b)(iv)(A) of Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(d) Pursuant to Section 3(b)(iv)(B) of Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

**18.3    Federal Freedom of Information Act.**

(a) MARAD is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to MARAD by the Recipient related to this agreement may become MARAD records subject to public release under 5 U.S.C. 552.

**18.4    History of Performance.** Under 2 CFR 200.206, any Federal awarding agency may consider the Recipient's performance under this agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**18.5    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**18.6    External Award Terms and Obligations.**

# EXHIBIT 9

FY 2025 HMEP States and Territories
NOFO (Excerpts)



**U.S. Department
of Transportation**
Pipeline and
Hazardous Materials
Safety Administration
(PHMSA)

# Notice of Funding Opportunity

## Hazardous Materials Emergency Preparedness (HMEP) Grant for States and Territories

## Fiscal Year (FY) 2025

NOFO Posted Date:         May 19, 2025
Applications Due Date:     June 20, 2025, 11:59 p.m. EST
Questions Due Date:       June 13, 2025, 11:59 p.m. EST

Applicants must be registered at www.grants.gov to apply online. It is highly recommended that applicants begin the registration process as soon as possible to avoid delays in submission. In addition, applicants must maintain an active registration in the System for Award Management at www.SAM.gov.

Furthermore, applicants are encouraged to register for an account with FedConnect at www.fedconnect.net before applying. FedConnect is a messaging platform where applicants can communicate directly with PHMSA. Your organization's Marketing Partner ID Number (MPIN), which can be retrieved from SAM, is required to create an account. For instructions on how to register in FedConnect and how it works, click on the link to access the *FedConnect: Ready, Set, Go! Tutorial* on the FedConnect home page.

**Assistance Listing (formerly CFDA)**
20.703 "Interagency Hazardous Materials Public Sector Training and Planning Grants"

**PHMSA Notice of Funding Opportunity Number**
693JK325NF0008

# Table of Contents

**SECTION A – BASIC INFORMATION** ........................................................................... **4**

    **A.1   Statement of Purpose** ........................................................ **4**

    **A.2   Statute and Program Authority** ...................................... **4**

    **A.3   Background** ........................................................................ **4**

**SECTION B - ELIGIBILITY** .......................................................................................... **5**

    **B.1   Eligible Applicants and Activities** .................................. **5**

    **B.2   Cost Sharing or Matching** ............................................... **5**

    **B.3   Funding Restrictions** ....................................................... **6**

**SECTION C – PROGRAM DESCRIPTION** ................................................................... **6**

    **C.1   Funding** ............................................................................. **6**

    **C.2   Period of Performance** ..................................................... **6**

    **C.3   Type of Award** ................................................................... **6**

**SECTION D - APPLICATION CONTENTS AND FORMAT** ........................................ **7**

    **D.1   Address to Request Application Package** ....................... **7**

    **D.2   Content and Form of Application Submission** .............. **7**

**SECTION E - SUBMISSION REQUIREMENTS AND DEADLINES** .......................... **8**

    **E.1   Submission Dates and Times** ......................................... **8**

    **E.2   Unique Entity Identifier (UEI) and System for Award Management (SAM)** ......... **8**

    **E.3    Other Submission Requirements** ................................. **9**

**SECTION F - APPLICATION REVIEW INFORMATION** ......................................... **10**

    **F.1   Criteria** ............................................................................ **10**

    **F.2   Review and Selection Process**........................................ **11**

    **F.3   FAPIIS Review** ............................................................... **11**

    **F.4   Anticipated Announcement and Federal Award Dates** ........ **12**

**SECTION G – AWARD NOTICES** ............................................................................... **12**

    **G.1  Federal Award Notices** .................................................. **12**

    **SECTION H – POST-AWARD REQUIREMENTS AND ADMINISTRATION** ........... **13**

    **H.1   Administrative and National Policy Requirements** ...... **13**

    **H.2   Reporting Requirements** ................................................ **14**

**SECTION I - FEDERAL AWARDING AGENCY CONTACTS** .................................. **15**

**PROGRAM SUMMARY**

| | |
|---|---|
| Federal Agency Name: | U.S. Department of Transportation (DOT) Pipeline and Hazardous Materials Safety Administration (PHMSA) |
| Funding Opportunity Title: | "Hazardous Materials Emergency Preparedness Grant for States and Territories – FY 2025" |
| Announcement Type: | Initial Announcement |
| Funding Opportunity Number: | 693JK25NF0008 |
| Assistance Listing Number: | 20.703 |
| NOFO Posted Date: | May 19, 2025 |
| Application Due Date: | June 20, 2025, 11:59 p.m. EST |
| Question Due Date: | June 13, 2025, 11:59 p.m. EST |

### SECTION H – POST-AWARD REQUIREMENTS AND ADMINISTRATION

**H.1    Administrative and National Policy Requirements**

The administration of this award by PHMSA and the Recipient will be based on the following Federal statutory and regulatory requirements:

1. 49 U.S.C. § 5116.

2. 2 CFR Part 200 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards.

3. The Recipient must comply with 49 CFR Part 20, "New Restrictions on Lobbying." 49 CFR Part 20 will be incorporated by reference into any award under this program and is available at www.ecfr.gov/ by clicking on Title 49 CFR Part 20.

4. Civil Rights and Title VI - As a condition of a grant award, grant recipients should demonstrate that the recipient has a plan for compliance with civil rights obligations and nondiscrimination laws, including Title VI of the Civil Rights Act of 1964 and implementing regulations (49 CFR Part 21), the Americans with Disabilities Act of 1990 (ADA), and Section 504 of the Rehabilitation Act, all other civil rights requirements, and accompanying regulations.  This should include a current Title VI plan, completed Community Participation Plan, and a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards.  DOT's and the applicable Operating Administrations' Office of Civil Rights may work with awarded grant recipients to ensure full compliance with Federal civil rights requirements.

5. The Recipient must comply with 49 CFR Part 32, "Government-wide Requirements for Drug Free Workplace (Financial Assistance)," which implements the requirements of Public Law 100-690, Title Subtitle D, "Drug-Free Workplace Act of 1988." 49 CFR Part 32 will be incorporated by reference into any award under this program and is available at: www.ecfr.gov/ by clicking on Title 49 CFR Part 32.

6. Pursuant to Section 3(b)(iv)(A) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

7. Pursuant to Section 3(b)(iv)(B) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

8. Compliance with Federal Law and Policies - The applicant assures and certifies, with respect to any application and awarded Project under this NOFO, that it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines,

and requirements as they relate to the application, acceptance, and use of Federal funds and will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

## H.2    Reporting Requirements

**Progress Reports:**  Each grant recipient is required to submit a progress report to show progression of approved projects and activities.  The reports must follow the instructions outlined in the terms and conditions of the grant award.  Grant recipients with a period of performance that is longer that 12 months are required to submit annual progress reports.  Grant recipients with a performance period of 12 months need only submit a final progress report (refer to section below).  Grant recipients must follow the instructions outlined in the terms and conditions of the grant award.

**Federal Financial Reports:**  Each grant recipient is required to submit Federal Financial Reports (SF-425) to show a cumulative account of expenditures from approved activities.  Grant recipients are required to submit annual Federal Financial Reports and must follow the instructions outlined in the terms and conditions of the grant award.

**Final Reports:**  Each recipient is required to submit a final Progress Report and a final Federal Financial Report (Final SF-425).  Final Federal Financial Reports and Progress Reports must be submitted by email at <u>HMEP.grants@dot.gov</u>.  The reports are due no later than 120 days after the performance period has ended.  Final reports must follow the instructions outlined in the terms and conditions of the grant award.

*All applications and reports will be made available to the public upon request.*

**Performance and Program Evaluation:**  As a condition of grant award, grant recipients may be required to participate in an evaluation undertaken by DOT or another agency or partner.  The evaluation may take different forms such as an implementation assessment across grant recipients; an impact or outcomes analysis of all or selected sites within or across grant recipients; or a benefit/cost analysis or assessment of return on investment.  DOT may require applicants to collect data elements to aid the evaluation or use information available through other reporting.  As a part of the evaluation, as a condition of award, grant recipients must agree to:  (1) make records available to the evaluation contractor or DOT staff; (2) provide access to program records, and any other relevant documents to calculate costs and benefits; (3) in the case of an impact analysis, facilitate the access to relevant information as requested; and (4) follow evaluation procedures as specified by the evaluation contractor or DOT staff.

Recipients and subrecipients are also encouraged to incorporate program evaluation, including associated data collection activities from the outset of their program design and implementation,